UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC JAMEL LESANE,

Plaintiff,

-against-

CHIEF USPO MICHAEL FITZPATRICK; USPO JI'VONNE GILMORE; USPO SHAWNTE LORICK; USPO JALEESA HARRIS; USPO JOSEPH LOMBARDO; USPO ERICA CUDINA; USPO JOHN DOE 1-20; USPO JANE DOE 1-20; FBI AGENT MARK VERE; FBI AGENTS 1-20; UNITED STATES MARSHALS SERVICES OFFICERS 1-20; FEDERAL BUREAU OF PRISONS JHON AND JANE DOE 1-50,

Defendants.

26 Civ. 1951 (GBD)

ORDER

GEORGE B. DANIELS, United States District Judge:

Plaintiff, who currently is incarcerated at USP McCreary in Kentucky, brings this action *pro se*. Plaintiff asserts claims: (1) for deliberate indifference to a serious risk of harm to him between 2023–2025, while in the custody of the United States Bureau of Prisons ("BOP") at multiple facilities outside this district; and (2) arising from Plaintiff's February 1, 2022, arrest in Bronx County, New York, by officers from the United States Probation Office for the Southern District of New York ("USPO"), the United States Marshals Service ("USMS"), and agents of the Federal Bureau of Investigation ("FBI"), based on his alleged criminal activity and violations of supervised release.[1]

By order dated May 13, 2026, Plaintiff's request to proceed *in forma pauperis* ("IFP"), that

[1] Plaintiff was convicted of criminal charges and supervised release violations related to this arrest. *See United States v. Lesane*, No. 22-CR-0110 (LJL) (S.D.N.Y. Sept. 13, 2023) (sentencing Lesane to 123 months' imprisonment, to run concurrently to a term of 24 months' imprisonment on the violation), *aff'd*, No. 23-7134, 2025 WL 3455740 (2d Cir. Dec. 2, 2025).

is, without prepayment of fees, was granted. For the reasons set forth below, this Court severs all of Plaintiff's claims regarding his treatment in BOP custody and transfers the claims, which are asserted against John and Jane Doe BOP officers, to the United States District Court for the Eastern District of New York, where Plaintiff's medical issues first arose. Further, this Court dismisses Plaintiff's malicious prosecution and fair trial claims and directs Plaintiff to show, by submitting a declaration within 30 days, any reason why his claims for unlawful search and false arrest should not be dismissed as time barred.

## I. BACKGROUND[2]

### A. Search and Arrest

Plaintiff Eric Lesane was on supervised release in this district.[3] On November 2, 2021, New York City Police Department (NYPD) Officers Milton Hernandez and Hector Alvarez notified USPO Officer Ji'vonne Gilmore that Plaintiff was a "person of interest" as someone who was in possession of firearms at 2551 Hering Avenue in the Bronx. (Compl., ECF No. 1, at 19.)

On January 24, 2022, Gilmore submitted an affidavit to District Judge Paul G. Gardephe to obtain an arrest warrant for Plaintiff based on his alleged violations of the terms of his supervised release.

Gilmore's supervisor, Shawnte Lorick, allegedly approved the affidavit. The affidavit stated that Plaintiff had failed to notify USPO officers of his change of address and had failed to

[2] The allegations are drawn from Plaintiff's complaint.

[3] In 2013, Plaintiff pled guilty in the Southern District of New York and was sentenced to 94 months' imprisonment. *See* J., ECF No. 24, *United States v. Lesane*, No. 12 Cr. 524 (PGG) (S.D.N.Y. Nov. 1, 2013), *aff'd*, 579 F.App'x 51 (2d Cir. Nov. 13, 2014). Plaintiff's motion under 28 U.S.C. § 2255 was granted to the extent that an amended judgment was entered on January 20, 2020, to correct a clerical error (referencing 28 U.S.C. § 922(k)), and was otherwise denied. *Lesane v. United States*, No. 15 Civ. 3403 (PGG) (S.D.N.Y. Jan. 20, 2020). Plaintiff was released from BOP custody to supervision in this district on April 6, 2021.

truthfully answer inquiries about his change in address. (*Id.* at 8, ¶¶ 2–3.) Plaintiff contends that these statements were false. He argues that the warrant was "fatally defective" in that it did not describe with particularity the place to be searched and failed to identify which of the three units at 2551 Hering Avenue was alleged to be Plaintiff's new residence. (*Id.* at 9–10, ¶¶ 4, 7.) He further argues that, because he did not reside at 2551 Hering Avenue, he had not consented to a search of those premises as part of his conditions of supervised release. (*Id.* 11, ¶ 10.)[4]

The warrant was executed on February 1, 2022. Gilmore, Lorick, Joseph Lombardo, Erica Cudina, and Jaleesa Harris from the USPO were involved in the search and arrest, as were FBI Agent Mark Vere and other unidentified FBI agents, and unidentified officers from the USMS.

At trial, Lorick and Gilmore testified that they had not actually seen Plaintiff arriving by car at his address of record on the date of his arrest, after allegedly having traveled there from 2551 Hering Avenue. (*Id.* at 20.) Moreover, Lorick testified at trial that he had not actually determined that Plaintiff had changed his address when he wrote the violation report but was in fact investigating that apparent change. (*Id.* at 21, ¶ 28.) USPO Officer Harris testified at trial that seized items had been in "plain view," but when shown photos, admitted that the items had been underneath other objects. (*Id.* at 22, ¶ 34.) )In addition, Officers Harris and Cudina each claimed at trial to have recovered the same rifle from under a bed. (*Id.* at 22, ¶ 35) Plaintiff contends that

[4] On direct appeal from Plaintiff's conviction on the violation of supervised release, the Second Circuit rejected this argument:

> Lesane asserts that Probation "strayed beyond the bounds" of the arrest warrant by searching 2551 Hering Avenue. But this contention is meritless. As the Government argues, pursuant to the terms of Lesane's supervised release, Probation was permitted to search Lesane's residence *or any premises he controlled* on reasonable suspicion that Lesane had committed a violation of supervised release or had contraband. . . . A reasonable officer would suspect a violation here.

*Lesane*, No. 23-7134, 2025 WL 3455740 (2d Cir. Dec. 2, 2025) (emphasis added).

these statements and others were materially inconsistent, amounting to perjury and fraud on the court. These allegations and other trial testimony appear to be a basis for Plaintiff's fabricated evidence claims. In addition, Plaintiff asserts that Michael Fitzpatrick, who was then Chief of the USPO in this district, failed to supervise employees. (*Id.* at 10, ¶ 8.)

Plaintiff brings claims for alleged violations of his rights under the Fourth and Fourteenth Amendments, including claims for unlawful search, false arrest, malicious prosecution, and due process (fabricated evidence) violations at trial. Plaintiff sues Fitzpatrick, as well as USPO staff personally involved in the search and arrest (Gilmore, Lorick, Lombardo, Cudina, and Harris), FBI Agent Vere and unidentified FBI agents, and unidentified USMS officers. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief, including better training and body-worn cameras for USPO officers, and termination of the employment of those involved in these events.

**B. Criminal proceedings**

According to public records, the district court presiding over Plaintiff's criminal proceedings denied a pretrial motion to suppress evidence seized during the February 1, 2022 search. *United States v. Lesane*, 22-CR-110 (VSB), 2023 WL 155538, at *9 (S.D.N.Y. January 13, 2023). The district court held:

> I first consider whether the search of 2551 Hering Avenue was justified under the search condition and the special needs exception. I find that the special needs exception applies, and that the search was reasonable under that exception. I also consider whether the Government has demonstrated probable cause, and I find that it has. In the alternative, assuming that Lesane's arrest was illegal, I consider whether the good faith exception would apply, and I find that it would.

*Id.* at *3.

Plaintiff represented himself at trial (with standby counsel), and a jury convicted him of being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1), and possessing

firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *See* J., ECF No. 142, *Lesane*, No. 22-CR-0110 (LJL) (S.D.N.Y. Sept. 12, 2023). In the revocation proceedings, the district court convicted Plaintiff on four of five counts of violating conditions of supervised release. *See* J., ECF No. 103, *Lesane*, No. 12-CR-524 (LJL) (S.D.N.Y. Sept. 12, 2023).

After trial, the district court declined to reconsider its denial of the motion to suppress. *See United States v. Lesane*, No. 22-CR-110 (LJL), 2023 WL 3560549, at *5 (S.D.N.Y. May 19, 2023) ("Even if the Court were to find that the arrest warrant was invalidly issued, Lesane has not presented either controlling law or evidence that would lead this Court to reconsider Judge Broderick's holding that the search of the Premises was permissible based on the special needs exception."). By order dated December 2, 2025, the Second Circuit affirmed the judgments. *United States v. Lesane*, No. 23-7134, 2025 WL 3455740, at *4 (2d Cir. Dec. 2, 2025).

**C. BOP Custody**

Plaintiff also brings claims arising during his confinement in the custody of the BOP, first at MDC Brooklyn in Kings County, New York, and later at FCI McKean in Pennsylvania, USP Big Sandy in Kentucky, and USP Victorville in California. The only named defendant for any of these claims appears to be "Federal Bureau of Prisons Jhon and Jane Doe D/B/A Federal Bureau of Prisons Employees 1-50." (Compl. at 2.)

Plaintiff alleges that on several occasions during his confined at MDC Brooklyn, BOP personnel ignored his sick call requests and denied him treatment or care for nerve issues in his hands and feet. (*See Id.*, at 30–32, ¶¶ 65–70).

Plaintiff also alleges that while he was at FCI McKean, from November 2, 2023, to July 2, 2024, his medical care was constitutionally inadequate, in that he repeatedly experienced delays or denial of care for progressive neurological, spinal, and genitourinary symptoms. (*See id.*, at 32–48, ¶¶73–108.) His pleas for stronger medication were also ignored, despite his escalating pain

and mobility impairment. For example, on June 11, 2024, Plaintiff fell because of numbness in his legs. (*Id.* at 48, ¶ 109.) In response, FCI McKean staff scheduled Plaintiff for medical care on June 12, 2024, but a facility-wide lockdown prevented him from being seen by a medical provider until June 20, 2024. (*Id.* at 48–49, ¶¶109–112.) On June 20, 2024, Plaintiff told medical staff that he had made "many, many, many, many, many attempts to get a stronger medication to relie[ve] his suffering . . . ." (*Id.* at 49, ¶ 112.)[5] Plaintiff notified the sentencing court and many others of these issues at FCI McKean. (*See id.* 52–54, ¶¶ 119–123 (describing letters sent to the BOP central office, the DOJ Inspector General, Pennsylvania General Assembly, Pennsylvania Governor Josh Shapiro, and U.S. Senator John Ossoff).)

In December 2024, a neurosurgeon indicated that Plaintiff had a dislocated disc and recommended an operation. (*Id.* at 53, ¶ 130.) In February 2025, one day before the scheduled operation, Plaintiff was transferred to a higher security facility (USP Big Sandy), which interfered with his operation. (*Id.*) Plaintiff contends that this was retaliatory, though he does not identify a particular defendant in connection with these claims.[6]

At USP Big Sandy, Plaintiff allegedly received inadequate medical care, from his arrival until he was transferred to USP Victorville in California in November 2025. (*Id.*) On December 3, 2025, while incarcerated at USP Victorville, Plaintiff was assaulted and suffered a broken jaw.[7]

[5] Plaintiff also alleges that FCI McKean staff failed to report or document Plaintiff's hunger strike after he was transferred to the special housing unit. (*See id.* at 53, ¶ 120.)

[6] Plaintiff has a pending petition for a writ of *habeas corpus*, under 28 U.S.C. § 2241, in the Western District of Pennsylvania challenging disciplinary action resulting from an incident on November 6, 2023, at FCI McKean that resulted in his loss of 41 days of Good Conduct Time, 15 days of disciplinary segregation, and 12 months' loss of tablet and visitation privileges. *See Lesane v. Warden*, No. 24-CV-00175 (W.D. Pa.).

[7] Plaintiff may be asserting a claim for failure to protect, in addition to claims regarding his medical care. As with all of his other claims, however, no named defendant is linked to the claim.

## II. LEGAL STANDARD

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Misjoinder of USPO Search/Arrest and BOP Conditions Claims

Plaintiff brings two sets of claims: (1) claims arising from his allegedly unlawful search and February 1, 2022, arrest; and (2) claims arising from inadequate medical care and other matters in BOP custody at MDC Brooklyn, FCI McKean, USP Big Sandy, and USP Victorville.

Rules 18 and 20 of the Federal Rules of Civil Procedure govern the joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a defendant. *See* Fed. R. Civ. P. 18(a).

Rule 20 permits a plaintiff to join multiple defendants in one action if: (1) a right to relief is asserted against all of the defendants, or the claims arise out of the same transaction, occurrence, or series of transactions and (2) questions of law or fact are common to all defendants. *See* Fed. R. Civ. P. 20(a)(2). Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all Defendants is

not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

The Court has the power to sever claims and parties. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). In determining whether to sever a claim, courts consider Rule 20 requirements and "additional factors, including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citing *Laureano v. Goord*, No. 06-CV-7845 (SHS) (RLE), 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)). Put simply, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Here, Plaintiff's search and false arrest claims against FBI agents and officers from the USPO and USMS involve wholly different evidence and witnesses from Plaintiff's claims against BOP staff regarding his treatment at BOP facilities. These claims against different defendants are not logically connected and, under Rules 18 and 20, are not properly joined in a single action. Severing these sets of claims also serves judicial economy. *See, e.g.*, *Webb v. Maldanado*, No. 13-CV-144 (RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) (stating that "[u]nrelated claims against different defendants belong in different suits . . . to prevent the sort of morass" created by a complaint with more than twenty defendants and countless unrelated claims (internal

quotation marks and citation omitted)). The Court therefore severs Plaintiff's claims against John Doe and Jane Doe BOP officials arising at BOP facilities.

It is unclear whether Plaintiff's claims against BOP staff arising at these different correctional facilities belong in a single action. Where an incarcerated plaintiff brings claims arising at different correctional facilities, courts often disallow joinder when the defendants from one facility are not involved in the conduct giving rise to the claims at another facility. *See, e.g.*, *Smith v. Goord*, No. 04-CV-6432 (CJS), 2006 WL 2850597, at *3 (W.D.N.Y. Sep. 22, 2006) (disallowing joinder of claims against defendants at different correctional facilities where there was no suggestion that original defendants were involved in the actions taken against plaintiff in a different facility more than one year later), *report and recommendation adopted*, 2007 WL 496371 (W.D.N.Y. Feb. 12, 2007); *Cook v. Williams*, No. 25-CV-1029 (SFR), 2026 WL 221808, at *5 (D. Conn. Jan. 28, 2026) ("[T]hese claims arise from separate transactions at different facilities and would require discovery of different sets of evidence and separate proofs at trial.").

By contrast, in a case where a plaintiff alleged that over several years, different defendants at two facilities all failed to adequately treat the same condition, the Second Circuit held that the claims arose from the same "series of transactions and occurrences" and that there were questions of law common to all defendants. *Harnage v. Lightner*, 916 F.3d 138, 142–43 (2d Cir. 2019) ("[E]ven though Harnage's allegations span several years and invoke several defendants, they all arise from the alleged failure of the named defendants to adequately treat [his] hemorrhoid condition before his first surgery"); *see also Velasco v. Semple*, No. 3:19-CV-811 (KAD), 2019 WL 4060372, at *3 (D. Conn. Aug. 28, 2019) ("[T]he Court will permit all claims relating to [plaintiff's] medical treatment to proceed in one action.").

Venue of Plaintiff's severed claims regarding medical care in facilities in Brooklyn, New York, Pennsylvania, Kentucky, and California, which may arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or the Federal Tort Claims Act (FTCA),[8] does not appear to be proper in this district. *See* 28 U.S.C. §§ 1391(b), 1402(b).[9] Venue of some or all of these claims is proper, however, in the United States District Court for the Eastern District of New York, where the earliest of Plaintiff's claims arose at MDC Brooklyn, in Kings County, New York (Kings County is in the Eastern District of New York). *See* 28 U.S.C. § 112(c); 28 U.S.C. § 1391(b)(2).

The Court therefore transfers Plaintiff's severed claims against John Doe and Jane Doe BOP officials arising at BOP facilities to the United States District Court for the Eastern District of New York.[10]

**B. Constitutional Claims Relating to Plaintiff's Arrest**

Plaintiff asserts claims against federal officers for alleged violations of his constitutional rights, and the Court therefore assumes at this stage, for purposes of this order, that his allegations might be construed as claims under *Bivens*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under [§ 1983]."); *Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (holding that the district court properly

[8] For claims under the FTCA, venue lies "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff also does not allege facts showing that he exhausted claims arising under the FTCA. 28 U.S.C. § 2675(a). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *Davis v. Goldstein*, 563 F. App'x 800, 802 (2d Cir. 2014) (alteration in original) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)).

[9] By contrast, venue of Plaintiff's claims regarding his search and arrest in Bronx County, and his criminal proceedings in this court, is proper in this district. *See* 28 U.S.C. § 1391(b)(2).

[10] The Court leaves for the transferee court the determination of whether Plaintiff's claims arising at separate facilities must be severed from one another.

construed § 1983 claims brought against federal employee as arising under *Bivens*); *but see* *Sigalovskaya* v. *Special Agent Abigail Braden*, 149 F.4th 226, 231–36, 227 (2d Cir. Aug. 27, 2025) (Lee, J., concurring) (affirming decision that Appellant could not state a *Bivens* claim for damages against an HSI special agent because her claim arose from a different context than *Bivens* and special factors weighed against extending *Bivens*).[11]

1. *Malicious Prosecution Claims*

To state a malicious prosecution claim, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding," "(4) actual malice[,]" and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (citation modified). Thus, "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Poventud v. City of New York*, 750 F.3d 121, 131 (2d Cir. 2014) ("In the context of § 1983 malicious prosecution cases, *Heck's* bar is coextensive with the favorable termination requirement.").

Plaintiff's criminal proceedings did not terminate in his favor, and the judgment of conviction has not been overturned on appeal or called into question by a federal *habeas corpus* proceeding. The Court therefore dismisses Plaintiff's malicious prosecution claim for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

[11] "[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), and a *Bivens* remedy is not available, "where there are 'special factors counselling hesitation in the absence of affirmative action by Congress,'" *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

## C. Denial of Fair Trial Claims

To state a claim for the denial of a fair trial based on fabricated evidence, a plaintiff must plausibly allege that "(1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021). "[A] criminal defendant's right to a fair trial protects more than the fairness of the trial itself[;] [i]ndeed, a criminal defendant can bring a fair trial claim even when no trial occurs at all." *Frost v. New York City Police Dept*, 980 F.3d 231, 249 (2d Cir. 2020); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under [§ 1983].").

Here, Plaintiff's claim appears to be based on two types of "false" information: (1) statements in the affidavit in support of the arrest warrant or violation report, and (2) testimony at trial. Plaintiff has not plainly identified the allegedly false statement made in seeking the arrest warrant, but he seems to suggest that USPO officers stated in the affidavit supporting the warrant that Plaintiff had changed his address. At trial, however, a USPO officer testified that, although there was cause to believe that Plaintiff had changed his address, they were still investigating whether that was the case. As the Second Circuit noted in rejecting a similar argument on direct appeal, "neither portion of the probation officers' testimony at trial showed any inaccuracies in the arrest warrant petition" and Plaintiff's arguments about false statements relied on "misreading the trial transcript." *Lesane*, 2025 WL 3455740, at *2.

Moreover, even if these allegations could suggest the creation of false information, Plaintiff's criminal proceedings did not terminate in his favor, and the judgment of conviction was not overturned on appeal or called into question by a federal *habeas corpus* proceeding. Success on a claim that the arrest warrant, which led to the discovery of evidence introduced at trial, was obtained based on fabricated information, would necessarily be inconsistent with Plaintiff's outstanding conviction. *See Smalls v. Collins*, 10 F.4th 117, 139 (2d Cir. 2021) ("Where the plaintiff asserts a section 1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an ongoing prosecution or outstanding conviction."), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). Accordingly, even assuming a *Bivens* action would lie, Plaintiff's allegations about statements made in support of the arrest warrant do not state a claim for a violation of his right to a fair trial.[12] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's claim based on allegedly conflicting trial testimony by USPO officers also cannot proceed. Plaintiff alleges, for example, that USPO Officer Harris testified at trial that seized items has been in "plain view," but when shown photos, admitted that the items had been underneath other objects. Additionally, Officers Harris and Ludina each claimed in trial testimony to have recovered the same rifle from under a bed. (ECF 1 at 22–23.)

Law enforcement officers are absolutely immune from suit for claims arising from their trial testimony. *Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983); *see, e.g.*, *Finley v. Hirsch*, 2013 WL 3450270, at *8 (D. Vt. July 9, 2013) (finding FBI agents absolutely immune from claims arising from their grand jury and trial testimony). That immunity applies even to claims arising

[12] In addition, as explained further below, this claim accrued in 2022 and thus appears to have been barred by the three-year limitations period when the complaint was filed in 2026.

from false testimony. *Briscoe*, 460 U.S. at 342–43. Defendants therefore are absolutely immune from Plaintiff's fair trial claims based on their allegedly false testimony. *See, e.g.*, *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (dismissing fair trial claim where "the only avenue by which the [alleged false evidence] could reach the jury was through [the officer's] testimony, for which he enjoys absolute immunity"); *Lettieri v. Dep't of Just.*, No. 23-CV-865 (LJV), 2023 WL 7553868, at *4 (W.D.N.Y. Oct. 19, 2023) (dismissing fair trial claim against police officer who was "absolutely immune from section 1983 liability arising from false or perjured grand jury testimony" (citation omitted)).

It is true that testimony at trial cannot immunize fabrication of evidence that arose in other contexts. See, e.g., *Robinson v. City of New York*, No. 15-CV-5850 (LGS), 2017 WL 2414811, at *5 (S.D.N.Y. June 2, 2017) ("Absolute immunity does not extend to [providing fabricated evidence to the prosecutor]; otherwise a police officer could immunize his unconstitutional conduct merely by later testifying about it before the grand jury."). But a claim based on the false trial testimony itself is subject to such immunity. Plaintiff's denial of fair trial claims must be dismissed. 28 U.S.C. §§ 1915(e)(2)(B)(ii)–(iii).

**D. Unlawful Search and False Arrest Claims**

Plaintiff brings claims against officers from the USPO, USMS, and FBI based on their search of the premises at 2551 Hering Avenue and arrest of Plaintiff on or about February 1, 2022. In New York, "[t]he statute of limitations for *Bivens* claims is governed by the statute of limitations applicable to New York state law" personal injury actions, *Gonzalez v. Hasty*, 802 F.3d 212, 219–20 (2d Cir. 2015), which is three years, *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); N.Y. C.P.L.R. § 214(5).

Under federal law, a claim generally accrues when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013);

*Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[A]ccrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief") (internal quotation marks and citations omitted). A Fourth Amendment claim for an unlawful search accrues "when the acts occurred . . . because plaintiff should have known or had reason to know of the injury." *Tellier v. Krimmer*, No. 96-CV-1000 (RJD), 1996 WL 518108, at *1 (E.D.N.Y. Sept. 4, 1996); *see also Bristol v. Downing*, 125 F.3d 843 (2d Cir. 1997). A claim for false arrest, which is a claim for detention without legal process, accrues when the plaintiff becomes held pursuant to legal process, that is, when he "appeared before the examining magistrate and was bound over for trial." *Wallace*, 549 U.S. 391. Thus, Plaintiff's claims for allegedly unlawful search and arrest, in violation of his constitutional rights accrued on or soon after February 1, 2022, when the arrest warrant was executed, and he was arraigned.

A plaintiff is generally not required to plead that an action is timely filed because the failure to file an action within the limitations period is an affirmative defense. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Where the existence of an affirmative defense like the statute of limitations is plain from the face of the pleading, however, dismissal is appropriate. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that the district court committed reversable error by failing to grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

Under the "prison mailbox" rule, a prisoner proceeding *pro se* files his documents on the date that he gives them to prison officials for forwarding. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). "[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." *Hardy v. Conway*, 162 F. App' x 61, 62 (2d Cir. 2006). Plaintiff's complaint was received on March 9, 2026, but he did not list the date that he signed the complaint, writing only "2026." Even if the Court deems Plaintiff's complaint filed in January 2026, given that Plaintiff's claims accrued in 2022, it was still brought nearly one year after the three-year limitations period expired.

New York law provides for tolling of the limitations period in certain circumstances. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is ultimately determined to be non-arbitrable), *id.* at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity). In addition, the doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl v. City of Long Beach*, 296 F.3d 76, 82–83 (2d Cir. 2003). Plaintiff does not provide any facts suggesting that the statute of limitations should be tolled in this case.

The Court therefore directs Plaintiff to show, by submitting a declaration within thirty (30) days of the date of this order, any reason why his claims for unlawful search and false arrest should not be dismissed as time-barred, including any basis for statutory or equitable tolling.

Typing or neatly handwriting the declaration or any further submissions will greatly assist the Court in addressing Plaintiff's claims.

## IV. CONCLUSION

Plaintiff's claims against "Federal Bureau of Prisons Jhon and Jane Doe 1-50," arising at BOP facilities (including MDC Brooklyn, FCI McKean, USP Big Sandy, and USP Victorville) are severed for misjoinder, Fed. R. Civ. P. 21, and transferred to the United States District Court for the Eastern District of New York.

Plaintiff's claims for malicious prosecution and violations of the right to a fair trial based on fabricated evidence are dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

The Court directs Plaintiff to show, by submitting a declaration within thirty (30) days of the date of this order, any reason why his claims for unlawful search and false arrest should not be dismissed as time barred. For Plaintiff's convenience, a declaration form is attached to this order. If Plaintiff does not respond, or his response is insufficient, the unlawful search and false arrest claims will be dismissed as untimely, 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court will decline, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of any state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: August 5, 2026
New York, New York

George B. Daniels
GEORGE B. DANIELS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

________________________________________

________________________________________

Write the first and last name of each plaintiff or petitioner.

Case No. ______ CV ________________

-against-

________________________________________

________________________________________

________________________________________

________________________________________

Write the first and last name of each defendant or respondent.

# DECLARATION

____________________________________________________________________

____________________________________________________________________

Briefly explain above the purpose of the declaration, for example, “in Opposition to Defendant’s Motion for Summary Judgment,” or “in Response to Order to Show Cause.”

I, ________________________________ , declare under penalty of perjury that the following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court order. You may also refer to and attach any relevant documents.

____________________________________________________________________

____________________________________________________________________

____________________________________________________________________

____________________________________________________________________

____________________________________________________________________

Attach additional pages and documents if necessary.

| | |
|---|---|
| Executed on (date) | Signature |
| Name | Prison Identification # (if incarcerated) |

| | | | |
|---|---|---|---|
| Address | City | State | Zip Code |

| | |
|---|---|
| Telephone Number (if available) | E-mail Address (if available) |